**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 1:26-cr-4 (APM)** |
| | : | |
| | : | |
| **RAHMANULLAH LAKANWAL** | : | **UNDER SEAL** |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S EMERGENCY MOTION FOR AN ORDER TO PROVIDE DEFENDANT WITH NONCONSENSUAL NUTRITIONAL AND MEDICAL CARE NECESSARY TO SUSTAIN HIS LIFE

The United States of America, by and through the Medical Litigation Team and the Principal United States Attorney for the District of Columbia, respectfully files this emergency motion seeking an order from this Court directing [redacted] the Bureau of Prisons (BOP), and any future treatment providers/facilities where defendant is housed to provide nonconsensual nutrition and medical treatment to defendant Rahmanullah Lakanwal while he is in their care, while he refuses adequate nutrition and/or medical treatment, and while such refusal threatens his life by creating an imminent risk of death or if continued refusal would foreseeably cause a deterioration in his condition that if not treated is likely to lead to death, until adequate oral intake of food and liquid and adequate acceptance of medical treatment is achieved and defendant's life is no longer threatened. If the defense opposes the relief requested in this motion, the government requests that the Court hold an emergency hearing on this motion.

## BACKGROUND

Defendant has been committed to the custody of the Attorney General since November 26, 2025. During that period of time, he has "refus[ed] food and, in some cases, water" (7/9/26 Tr.

11). As a result, his health "deteriorated quite substantially," and in July of 2026, his condition became "dire." *Id.* at 8. [redacted]

The government understands that during a spring 2026 hospitalization resulting from his refusal to accept food, defendant indicated to [redacted] that if he became incapacitated, he consented [redacted] whatever care was necessary to preserve his life. Following that hospitalization, he was returned to jail, where he again refused food. Thereafter, [redacted], defendant was transferred [redacted] for medical treatment necessary to preserve his life. [redacted] He received nutrition [redacted] and medical care pursuant to his prior consent to receive treatment deemed necessary [redacted] to preserve his life should he become incapacitated.

[redacted]

[redacted]

[redacted] that defendant is now able to consume food through his mouth.

[redacted]

[redacted] starting at approximately noon on August 25, 2026, defendant began refusing to receive nutrition both orally and through the feeding tube. [redacted] it is medically necessary for defendant to receive nutrition in order to preserve his life.

[redacted]

[redacted]

Because defendant is refusing nutrition and because without nutrition, his life is in danger, the government hereby requests the Court order [redacted] any future treatment provider/facility in which defendant is housed while in the custody of the Attorney General to provide defendant nonconsensual nutrition and medical treatment as deemed necessary to sustain his life, including, but not limited to, nonconsensual nutrition administered through an already-implanted feeding tube, intravenously, or through a nasogastric tube; replacement, maintenance, and care of defendant's feeding tube when medically necessary; and lab work relating to the administration of nutrition. We further request that the Court's Order remain in effect at all times while the defendant is in the custody of the Attorney General and is refusing nutrition and/or treatment deemed necessary to sustain his life.

If the defense opposes the relief requested in this motion, the government requests that the Court hold an emergency hearing on this motion.

## **ANALYSIS**

The United States Marshals Service (USMS) "shall provide for the safe-keeping of any person arrested, or held under authority of any enactment of Congress pending commitment to an institution." 18 U.S.C. § 4086.[1] The United States has an affirmative duty to provide defendant with nutritional and medical care, even without his consent. "As his custodian, the United States cannot 'allow' any person held in custody to starve himself to death. Whatever the medical ethics for a person at liberty, 'the United States as custodian has additional obligations.'" *Aamer v. Obama*, 953 F.Supp.2d 213, 221 (D.D.C. July 16, 2013). "Numerous courts have recognized the

[1] The USMS lacks litigating authority before this Court. *See* 28 U.S.C. § 566.

Government's affirmative duty to prevent suicide and to provide life-saving nutritional and medical care to persons in custody." *Id.*

As Judge Rosemary Collyer explained in *Aamer*:

> The right to due process under the Fifth and Fourteenth Amendments does not include a right to commit suicide and a right to assistance in doing so. *Washington v. Glucksberg*, 521 U.S. 702, 723, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). Moreover, under the Eighth Amendment, inmates have a right to adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Prison officials are responsible for taking reasonable steps to guarantee the safety of inmates in their charge. *Id.* Thus, "prison officials must take reasonable preventative steps when they are aware that there is a substantial risk that an inmate may attempt to take his own life." *Estate of Novack ex rel. Turbin v. Cty. Of Wood*, 226 F.3d 525, 529 (7th Cir. 2000). The Government has a legitimate penological interest in preventing suicide, and the involuntary feeding of hunger-striking prisoners and detainees has been repeatedly upheld. *See, e.g., In re Grand Jury Subpoena*, 150 F.3d 170, 172 (2d Cir. 1998) (involuntary feeding of civil contemnor detained for refusal to testify before a grand jury did not violate the Constitution); *Garza v. Carlson*, 877 F.2d 14, 17 (8th Cir. 1989) (prisoner's constitutional rights were not violated by threat of force-feeding; preservation of prisoners' health is a legitimate objective); *In re Soliman*, 134 F.Supp.2d 1238 (N.D.Ala. 2001) (enteral feeding[2] of hunger-striking INS detainee in indefinite detention was reasonable and did not violate his rights), *vacated as moot*, 296 F.3d 1237 (11th Cir. 2002); *see also* 28 C.F.R. §§ 549.60-.66 (medical officers of the Bureau of Prisons may administer medical treatment to prison inmates if it is determined that the inmate's life or permanent health is in danger).

*Aamer*, 953 F.Supp.2d at 221-22.

---

[2] "Enteral feeding refers to intake of food via the gastrointestinal (GI) tract. . . . Enteral feeding may mean nutrition taken through the mouth or through a tube that goes directly to the stomach or small intestine. In the medical setting, the term enteral feeding is most often used to mean tube feeding." Megan Dix, Healthline, *Enteral Feeding: How It Works and When It's Used* (July 13, 2023), *available at* https://www.healthline.com/health/enteral-feeding.

"The only way for the government to preserve the life of a hunger striking detainee is to force-feed that person." *In re Soliman*, 134 F.Supp.2d at 1253. "The mere allegation of forced-feeding does not describe a constitutional violation." *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992). One court has stated that "the government may force-feed [defendant] despite any First or Fifth Amendment rights he may possess, but only so long as nasogastric tube or intravenous feeding procedures are employed." *In re Soliman*, 134 F.Supp.2d at 1259.[3] Indeed, BOP regulations allow treatment of detainees in life-threatening situations, even without the detainee's consent. 28 C.F.R. § 549.65(c) ("When, after reasonable efforts, or in an emergency preventing such efforts, a medical necessity for immediate treatment of a life or health threatening situation exists, the physician may order that treatment be administered without the consent of the inmate").

---

[3] In *In re Soliman*, the District Court for the Northern District of Alabama explained, "One commentator has noted that there are three methods of force-feeding: 1) nasogastric tube feeding, accomplished by inserting a tube down the nose through the esophagus and into the stomach; 2) intravenous feeding, accomplished by inserting a catheter into a major blood vessel leading to the heart; and 3) gastro[st]omy, direct surgical access to the stomach." *In re Soliman*, 134 F.Supp.2d at 1254 (citation omitted). The Court stated that force-feeding through a nasogastric tube "is the preferred method for force-feeding, and does not represent an exaggerated response to [a] hunger strike." *Id.* On the other hand, the Court described gastrostomy as "an extremely invasive procedure." *Id.*

In this motion, the government is requesting an order that directs facilities where defendant is housed, in the event that defendant refuses nutrition and/or medical treatment and such refusal endangers his life, to provide defendant with nonconsensual nutrition and medical treatment necessary to preserve his life through nasogastric tube feeding if that is an option, intravenous feeding, and/or an already-implanted feeding tube. In the event that the government deems it necessary to request that the court order a treatment provider to conduct a nonconsensual gastrostomy, the government will seek a separate order. This approach is consistent with BOP policy regarding hunger strikes. *See* Federal Bureau of Prisons Program Statement P5562.05, Hunger Strikes (July 29, 2005), at 7, *available at* https://www.bop.gov/policy/progstat/5562_005.pdf (stating that when a physician orders that a hunger-striking inmate receive involuntary medical treatment, "Normally, this is to consist of a nasogastric tube for feeding. If unsuccessful or medically inappropriate, then intravenous fluids and hyperalimentations intravenously may be necessary. As a last resort, gastrostomy and tube feeding through the stomach may be required, however, review by the appropriate court should first be sought before attempting this treatment.").

Moreover, courts have found a rational connection between force-feeding hunger strikers and the government's interest in orderly operations of a detention facility. Were the government to allow hunger-striking defendants to die, other inmates could infer that the government is indifferent to their well-being, and such a result would likely incite disorderly conduct. *In re Soliman*, 134 F.Supp.2d at 1253. Additionally, the inability to force feed a hunger-striking defendant creates an "onerous administrative burden" on the detention facility because, as has happened in this case, hunger-striking defendants often require frequent transport between different detention centers and/or hospitals in order to preserve their life. *In re Soliman*, 134 F.Supp.2d at 1258; *see also* 28 C.F.R. § 549.63(d) (regulations relating to BOP & medical services for hunger-striking inmates) ("When medical staff consider it medically mandatory, an inmate on a hunger strike will be transferred to a Medical Referral Center or to another Bureau institution considered medically appropriate, or to a community hospital.").

Here, the record clearly demonstrates that the defendant remains in the custody of the Attorney General, that his prior refusals of nutrition and hydration have put his life in danger, and that his present refusal to receive nutrition endangers his life. The defendant has medical capacity to make determinations regarding his health, and he is refusing nutrition that is necessary to sustain his life. "Numerous courts have recognized the Government's affirmative duty to prevent suicide and to provide life-saving nutritional and medical care to persons in custody." *Aamer*, 953 F.Supp.2d at 221. Accordingly, the government submits that an order directing the nonconsensual administration of nutrition and medical care to sustain defendant's life is necessary, appropriate, and supported by the factual record herein.

**CONCLUSION**

For these reasons, the Court should order [redacted] and any future treatment provider/facility where defendant is housed to

provide nonconsensual nutrition and medical treatment to defendant while he is in their care, while he refuses nutrition and/or medical treatment, and while such refusal threatens his life by creating an imminent risk of death or if continued refusal would foreseeably cause a deterioration in his condition that if not treated is likely to lead to death, until adequate oral intake of food and liquid and adequate acceptance of medical treatment is achieved and defendant's life is no longer threatened.

Respectfully submitted,

ALICIA M. LONG
Principal Assistant United States Attorney
D.C. Bar Number 1659433
United States Attorney's Office
601 D Street, NW
Washington, DC 20530
Telephone: 202-252-6889
Email: alicia.long@usdoj.gov

/s/ Kacie M. Weston
KACIE M. WESTON
Chief, Special Proceedings Division
MD Bar
601 D Street, N.W.
Washington, D.C. 20530
(202)252-7509
Kacie.Weston@usdoj.gov

*/s/ Tracy Suhr*
TRACY SUHR
Assistant United States Attorney
Special Proceedings Division
NY Bar Member
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-6898
Tracy.Suhr@usdoj.gov

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that, this 28th day of August 2026, I caused a copy of the foregoing to be served via ECF on counsel of record.

/s/ Kacie M. Weston
Kacie M. Weston
Assistant United States Attorney